1

```
1                    UNITED STATES DISTRICT COURT
2                    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - X

4    UNITED STATES OF AMERICA,        :   99-CR-19
                                             (NG)
5                        Plaintiff, :

6       - against -                   :   United States Courthouse
                                          Brooklyn, New York
7    VADIM PAVLOTSKIY,                :
                                          June 22, 2001
8                        Defendant. :     3:30 o'clock p.m.
     - - - - - - - - - - - - - - - X
9
                         TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
10                       BEFORE THE HONORABLE NINA GERSHON
                         UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:            LORETTA E. LYNCH
13                                 United States Attorney
                                   One Pierrepont Plaza
14                                 Brooklyn, New York 11201
                                   BY:  CATHERINE YOUSSEF
15                                      SETH LEVINE
                                   Assistant United States Attorney
16
     For the Defendant:            DAVID JACOBS, ESQ.
17

18

19

20

21

22

23
     Official Court Reporter:          Diana Pereira, RPR, CSR, CRR
24   225 Cadman Plaza East             (718) 260-2600 x2507
     Brooklyn, New York  11201         DianaUS@worldnet.att.net
25        Proceedings recorded by mechanical stenography.
                  Transcript produced by CAT.
```

2

1          THE CLERK: The Honorable Nina Gershon presiding.

2   United States versus Vadim Pavlotskiy.

3          THE COURT:  Who is the probation officer?

4          THE CLERK:  She is coming forward now, Vita.

5          THE CLERK:  You may be seated.  I will swear the

6   Russian interpreter.

7          (Interpreter sworn).

8          THE CLERK: Counsel, your appearances, please.

9          MS. YOUSSEF: Catherine Youssef and Seth Levine for

10  the government.  Also present, DEA Agent Perfetti.

11         MR. JACOBS: For the defendant, David Jacobs, 26 Court

12  Street, Brooklyn, New York.

13         Good afternoon, your Honor.

14         THE COURT:  Good afternoon.

15         Counsel, I have reviewed the presentence report.

16  Were there any addendums to the presentence report?

17         PROBATION OFFICER:  No, your Honor.

18         THE COURT:  Did the defendant read the presentence

19  report?  Mr. Pavlotskiy?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Was it translated for you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Did you discuss it with your attorney?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I would like to put on the record the

1   other materials that I have reviewed as well as the

2   presentence report.

3          The defense attorney filed a letter dated May 28th

4   and there were attachments from family members and certain

5   other attachments to that letter, all of which I have

6   reviewed.

7          I have reviewed the June 15th letter from government

8   counsel in response.

9          Is there anything else that I should have in my

10   files?

11          MS. YOUSSEF:  Not from the government.

12          I don't believe so, your Honor.

13          MR. JACOBS: No, your Honor.

14          THE COURT:  We have one of those tripartite

15   sentencing proceedings where there is wild disparity between

16   the probation, the government, and the defendant.

17          I was thinking about what would be the best way to

18   attempt to procedurally go here from.  What I think I might do

19   is give you my views, which I don't think comport entirely

20   with any one of the other three views, so we will have four

21   separate views.  I think that might be more helpful, if I

22   layout what my views on this, and then if you want to respond,

23   then you'll know what you are responding to.

24          I did want to ask first, though, Mr. Jacobs, I want

25   to be clear about what your position was.

D. Pereira, CRR

4

1        As I understand it, on the prostitution counts, you

2   don't disagree that it should be base offense level 14 with a

3   four-level upward adjustment for the defendant's role, and you

4   don't disagree with the multi-count adjustment?

5        MR. JACOBS: Correct.

6        THE COURT:  Okay.  I think there is no disagreement

7   on the fact that the gun count has to be a five-year

8   consecutive count.  Everyone is in agreement on that?

9        MR. JACOBS: That's the law, Judge.

10       MS. YOUSSEF: Yes, Judge.

11       THE COURT:  That's the law.  Yes, it is.

12       Okay.

13       Then, with respect to the quantity of drugs issue,

14   the defendant has agreed to level 16 19,000 units.  The

15   government requests level 20, which would be 40,000 units.

16   The probation refers to the government.  The government refers

17   to the probation report.  I think there is a lack of

18   specificity in any of the papers that I have that would

19   justify my finding anything above the agreed-upon level 16.

20       The government does not give me a basis for finding

21   by a preponderance that the 40,000 units are at issue here.

22   They just refer to the existence of wiretaps.  They refer to

23   the existence of things.  They cite the law accurately but I

24   don't see on what basis I could make a factual finding.

25       MS. YOUSSEF: Your Honor, just to address that.  The

1    government would be prepared to itemize for the court where

2    along the way the 40,000 units can be demonstrated and in

3    which particular wiretap taped conversation --

4            THE COURT:  Don't you think you should have done that

5    before the time of the sentencing hearing?

6            MS. YOUSSEF:  Your Honor, quite frankly, we thought

7    that the wiretaps evidence was known to the defense and to the

8    court as part of this case.  Certainly, it can be further

9    itemized at this point.

10            THE COURT:  You are saying it was at this trial?

11            MS. YOUSSEF:  Well, it was certainly part of the

12    record that was -- not part of the trial because at the trial

13    really the focus was the gun case.  But up to the point of

14    trial, the wiretaps had been given to the defense.  Marked as

15    exhibits for the trial --

16            THE COURT:  I know.  Your letter is completely --

17    page 5 cites the law and it says, based on hundreds of hours

18    of wiretaps.  That's not something that the Court can then say

19    I have a factual basis, without even a transcript of a wiretap

20    or anything in front of me.

21            MS. YOUSSEF:   Judge, the government is prepared to

22    identify the wiretaps.  I apologize that that wasn't done up

23    to this point.  Certainly, they exist and the government is

24    ready to either play the calls or show the court the

25    transcripts that exist.

D. Pereira, CRR

1            THE COURT:  Mr. Jacobs, you want to address this?

2            MR. JACOBS: Judge, I wasn't counsel up until

3   recently.  I have nine boxes, cartons of transcripts relating

4   to these alleged wiretaps.  The government concedes there are

5   hundreds of hours.  I would need literally, probably weeks to

6   go through them to see what evidence is in the wiretaps to

7   support the government's position or to counter the position.

8   In my letter, I specifically said that they were

9   conjecturally -- they were conclusory, there wasn't enough

10  specificity as to what the wiretaps said.  I think it is a

11  little too late for the government to say we could now point

12  to the wiretaps with specificity.  I think they had an

13  opportunity to do it.  I would also add, Judge --

14            THE COURT:  Especially since you pointed out that you

15  objected to it and the grounds that you objected to.

16            MR. JACOBS: Their letter came in after your Honor's

17  scheduling order permitted it, to start with.

18            THE COURT:  Anything else on that point?

19            MS. YOUSSEF:   Judge, I would just say, to the extent

20  that probation had already indicated -- had really summarized

21  the wiretap tapes as part of its report, the government really

22  didn't feel the need to set that forth as part of the letter

23  that it submitted.

24            THE COURT:  Excuse me.  The PSR just says we agree

25  with the government.  Where does it lay it out in the PSR?

1        MS. YOUSSEF:    I think actually, Judge, I think it

2 goes further than that.  For example, in paragraphs 44 and 45,

3 it makes estimates based on --

4        THE COURT:  I am reading the section that deals with

5 valid Pavlotskiy.  That's paragraph 47.  I don't know why I

6 would be relying on 44 and 45.  I am relying on what's said

7 about Vadim Pavlotskiy, and it doesn't say anything about any

8 numbers that would get us up to 40,000 units.

9        MS. YOUSSEF:    Your Honor, with all due respect, I

10 would just point out that the defendant did plead to a

11 conspiracy count, which means that we should be considering

12 the foreseeable drug quantity with respect to the other

13 participants in the conspiracy.  Therefore, the court should

14 look further than the paragraphs that are attributable to

15 Mr. Pavlotskiy and also look to the paragraphs, for example,

16 that deal with Mr. Ventura, Mr. Urchoff, defendant Belov and

17 the other defendants.

18        THE COURT:  I am going to apply the defense level 16

19 to the quantities.

20        The government has the obligation of establishing

21 this to the satisfaction of the court by a preponderance of

22 the evidence.  The second circuit has been very clear about

23 the fact that the court has to make specific findings based

24 upon specific things.  I don't think that the government can

25 rely either on what they put in their letter or what's in the

8

1  PSR referring to what one defendant did and another defendant

2  did.

3         You have the obligation to show the foreseeability on

4  each item.  You have the obligation to show the quantity.  It

5  is a lot of work.  The work has to be done before the

6  sentence.

7         In this case, I don't see any basis for putting this

8  over to allow this to be done, you know, in more detail later,

9  where the defense really put you on clear notice that this was

10  an issue.  Your response was just to say hundreds of hours of

11  wiretaps.  This is not material that was before me at the

12  trial.

13         All right.

14         Turning to the next issue, obstruction of justice and

15  acceptance of responsibility.

16         Obstruction of justice, based on perjury, which the

17  government relies on what occurred at the gun trial.  The

18  defendant had already pled guilty to the drug count.  My

19  question is, how can this obstruction of justice apply to the

20  drug count and how can it apply to the prostitution count when

21  the prostitution count isn't even sufficiently related, that

22  it be grouped with the drug count?

23         MS. YOUSSEF:  Your Honor, just to address the drug

24  point.  The obstruction of justice is apparent because the gun

25  and the drugs are directly connected as part of the same

D. Pereira, CRR

9

1   crime.

2          But even if they weren't, certainly, obstruction of

3   justice is something that the court has to consider with

4   respect to all the relevant conduct in question here, not just

5   the offense for which the defendant is on trial.

6          Therefore --

7          THE COURT:  You are saying obstruction of justice

8   doesn't go count by count?

9          MS. YOUSSEF:   It doesn't go count by count.  It has

10  to do with the entire criminal conduct in question, not just

11  specific to what the indictment is.

12         THE COURT:  What's the basis for saying that?

13         MS. YOUSSEF:   One moment, your Honor.

14         THE COURT:  Yes.

15         THE COURT:  What's the obstruction guideline?  Is it

16  in Section 3?

17         PROBATION OFFICER:  3C1.1, your Honor.

18         THE COURT:  Thank you.

19         The probation officer applied it count by count, as I

20  understand it?

21         PROBATION OFFICER:  Yes, your Honor.  We take the

22  position because 3C1.1 does direct obstructive behavior during

23  the course of the instant offense or any relevant conduct,

24  which is why we applied it for each --

25         THE COURT:   How did you find it to be relevant

10

1    conduct as to the prostitution count, which you didn't group

2    because they are not related?

3            PROBATION OFFICER:  Your Honor, the obstruction --

4            MR. LEVINE:    I believe the obstruction in this case,

5    the two-point increase occurs in the portion of the

6    calculation relating to the drugs.  It does not appear in the

7    prostitution calculation, your Honor.  It appears in the drug

8    calculation relating to CR-19--

9            PROBATION OFFICER:  Right, that is correct, your

10   Honor.

11           THE COURT:  You didn't apply it but you didn't give

12   him acceptance of responsibility because of the obstruction of

13   justice?

14           PROBATION OFFICER:  Because acceptance of

15   responsibility can only be applied on one occasion, so even

16   though they pled guilty to some of the counts, there was

17   obstructive behavior the way the Probation Department found

18   obstruction of justice can only be applied once so it is

19   either applied or it is not applied.

20           THE COURT:  Obstruction--

21           PROBATION OFFICER:  I mean acceptance of

22   responsibility can only be applied once.

23           THE COURT:  So when we do the sentence calculation,

24   you are saying -- where does it -- you are saying -- let's

25   just see here.

1    You are saying that--

2    MR. LEVINE:    Your Honor, perhaps I could be of

3  assistance because I have gone over this matter with the

4  Probation Department.

5    THE COURT:  If you could just wait one minute because

6  I am just trying to sort something out here.

7    You are saying that the acceptance reduction would

8  come only after the multicount analysis?

9    PROBATION OFFICER:  Correct.

10    THE COURT:  Okay.

11    Okay, go ahead.

12    MR. LEVINE:    Your Honor, I think perhaps the court

13  has already figured out what I was going to try to assist

14  with.

15    The only point that I was going to make was just that

16  the manner in which this gets calculated is the drug

17  calculation is done separately.  The prostitution case for the

18  purpose of this is really just being converted into units.  So

19  the acceptance is only calculated at the end.  It is not

20  calculated within each individual count.

21    THE COURT:  Right.

22    Doing that, how would one deprive him of acceptance

23  of responsibility on the prostitution case as to which he made

24  a timely plea?

25    MR. LEVINE:    I think, your Honor, the position of

D. Pereira, CRR

12

1  the Probation Department as taken in the report is that

2  acceptance has to be applied across the board.  Even assuming

3  that acceptance should be applied to the prostitution case

4  because of the time of the plea, even if you subtracted three

5  points from the prostitution counts themselves, that would in

6  no way affect, as I understand it, the multicount adjustment,

7  because the prostitution count, all of those counts, are being

8  converted into units.  Whether the number was an 18 or a 15,

9  you would still have one unit for each of them.

10           THE COURT:  Right.

11           MR. LEVINE:  Your Honor, this question is something

12  that I was also confused about myself, and my understanding is

13  that because the defendant -- and Ms. Youssef will address the

14  specific issues relating to the drug case -- is not entitled

15  to acceptance there.

16           There has also been issues raised by the Probation

17  Department about minimization during the probation report

18  preparation on the prostitution case, which the government

19  commented on its letter.  The overall evaluation of acceptance

20  is it is not warranted.

21           Nonetheless, my understanding is that even if you

22  were to apply the acceptance to the prostitution itself, which

23  I am told by the probation officer and the supervising

24  probation officer would be an incorrect way under the

25  guidelines to calculate this, my understanding is even if you

13

1   did that, it would have no impact on the ultimate guideline

2   calculation; at least as it pertains to the prostitution case

3   standing alone, because the unit calculation for each of those

4   counts would remain at one unit for each one of those charges.

5          THE COURT:  Because it is so close to the number that

6   applies in drug --

7          MR. LEVINE: If you look, for example, on page 23, 24,

8   of the presentence report and the probation officer, I know,

9   correct me if I am wrong, because she is far more familiar --

10  any page, 22, 23, 24, doesn't matter which.

11         If you see, your Honor, these are the multicount

12  adjustments for the prostitution charge which the defendant

13  has already -- counsel has already explained there is no

14  objection to.

15         THE COURT:  That's not the multicount.

16         MR. LEVINE: These are the individualized counts.

17         THE COURT:  Right.

18         MR. LEVINE: They all end up with an 18.

19         What happens with them, then, on page 25, is each one

20  of those level 18 counts are assigned a unit value.

21         THE COURT:  I understand that.

22         MR. LEVINE: It is my understanding that even were

23  acceptance to be applied specifically to the prostitution

24  right there, putting all the other -- you would still end up

25  with one unit.

1          THE COURT:  Right.

2          But the reason it doesn't -- whether or not it makes

3   a difference depends on the range between the levels for the

4   prostitution case and the level for the other counts, the drug

5   counts.

6          While it doesn't matter in this case, perhaps, the

7   fact is, it matters.

8          It just strikes me that there is something incorrect

9   about saying that someone is denied acceptance of

10  responsibility when he pleads guilty in a timely fashion

11  because you are going to apply something to it that really

12  oughtn't to apply.  That's very  troubling to me.

13         MR. JACOBS: Judge, may I just add something?

14         If you look at the calculation method of the

15  Probation Department, at the bottom of page 25 into the top of

16  page 26, after adding units and coming out with an adjusted

17  offense level, on page 26, line 12, after all that computation

18  is done, there is an adjustment for acceptance of

19  responsibility.  They find none here but there is a place

20  where that is ultimately subtracted from the combined adjusted

21  offense level.

22         THE COURT:  Yes.

23         MR. JACOBS: I don't think it has to do with units.  I

24  think it has to do with levels.

25         My suggestion, two points off there would result in a

D. Pereira, CRR

1  total offense level 25.  The government says it wouldn't, it

2  would result in a 27 anyway.  That can't be true.

3          MR. LEVINE: That's not what I said.

4          THE COURT:  No.  I understand what they are saying.

5  They are saying that it doesn't matter where you -- that if

6  you made these levels 18s into level 15s because of acceptance

7  of responsibility, if you separated it out, it would be the

8  same.

9          But if you use the level 18s, then it seems to me --

10  I don't see why acceptance of responsibility ought to come off

11  at the end.  You use a level 18, why, three levels ought not

12  to come off at the end.

13          MR. LEVINE: Your Honor, certainly because the

14  acceptance of responsibility with respect to what happened in

15  the prostitution case shouldn't have an effect on what

16  happened with respect to the overall calculation for the drug

17  cause.

18          THE COURT:  That's nice to say but the guidelines

19  require that I treat these cases as if they are together.  I

20  am using a multicount adjustment.  If they are going to be

21  treated together, in some respects that helps the government.

22  In some respects, that helps the defendant.  I don't see how

23  the defendant can be deprived of the benefit of the acceptance

24  of responsibility that he did engage in.

25          PROBATION OFFICER:  Your Honor, if I could just say

16

1  something.

2          The way at least the Probation Department calculates

3  when these issues arise where you have a case where someone

4  pleads guilty and maybe is found guilty at trial, we find

5  guidance in the application note 1 of 3E1.1.  Maybe it is a

6  matter of interpretation, but in determining whether a

7  defendant qualifies for a reduction, we look at the offense of

8  conviction and any relevant conduct.  Only one determination

9  can be made.

10          Although he pled guilty to the drug charge, the fact

11  that there was obstructive behavior at trial, maybe actually I

12  think he falsely testified as to when he sold drugs, coupled

13  with the statements made to us during the presentence

14  interview, all the relevant conduct, looking at that, we

15  determined that acceptance should not be applied.

16          THE COURT:  Right.

17          The prostitution case is not relevant conduct to

18  either the drug or the gun charge.  Period.  And nobody

19  suggests it is and your report doesn't suggest it is, and it

20  just plain isn't.

21          PROBATION OFFICER:  Okay.

22          THE COURT:  That's the problem.  It is fine if it is

23  all relevant conduct, but it isn't.

24          PROBATION OFFICER:  Okay.

25          THE COURT:  I appreciate that the defendant is not

D. Pereira, CRR

1  entitled to acceptance, for example, on the gun charge.  I

2  don't see how he could be denied it on the prostitution

3  count.  The government is saying I don't know that it is

4  making a difference here.  I don't know if it makes a

5  difference if the subtraction comes afterwards.  Does it give

6  him a greater benefit?

7        MR. LEVINE: I think the point Ms. Youssef was making,

8  if you end up subtracting that acceptance from the prosecution

9  and putting aside the concerns probation has raised relating

10 to minimization during the probation interview, you

11 essentially are effectively awarding acceptance for all of

12 these cases, including the drug cause, and --

13       THE COURT:  It is only three levels.  It is because

14 they are being combined.

15       MR. LEVINE: What you have, you've taken -- I know the

16 numbers may changed based on your Honor's findings relating to

17 the drugs.  If you take it from this report, you have 22 plus

18 7.  Excuse me, plus 5.

19       The 22 calculation is the adjusted offense level

20 relating to the case Ms. Youssef has tried before your Honor.

21 The additional five units relates to the prostitution case.

22       The Probation Department has said, well, since we

23 were now making an overall determination of acceptance of

24 responsibility vis-a-vis this entire matter and in this entire

25 matter, based both on the conduct of the defendant during the

D. Pereira, CRR

18

1  trial and other conduct, the defendant has not manifested the

2  requisite attitude and actions to merit acceptance of

3  responsibility.

4         That's why, your Honor, I was discussing with the

5  court where you subtracted it from, because I do think it

6  makes some difference.

7         THE COURT:  Now I am looking at it, I have a

8  calculation here.  If the drugs are treated at level 16 and

9  the prostitution case level 18, then you have 18 plus 6 is 24,

10  minus 3 for acceptance is 21.

11        If you do it the other way, if you do the drugs level

12  16, and you reduce the three levels from the 18 and make them

13  all 15, you end up with 15 plus 6, equals 21.

14        It is the same.

15        MR. LEVINE: Did that include the two -- maybe I

16  misheard you.  Based on, if you start with a base of 16 for

17  the drugs, you need to then add -- I think you need to add for

18  obstruction no matter what you do with the acceptance, and I

19  know Ms. Youssef can address the relationship between that.

20  That's 18.

21        I know, also, I will let Ms. Youssef speak to it --

22        THE COURT:  Right.  If it is 18, it is again, it is

23  just plus 6.

24        MR. LEVINE: Just so we do this once, we believe it

25  should be 18 plus 4 for the role, which would, I think, get us

19

1   back to 22 and back where we started, your Honor.

2          THE COURT:   Let's go through -- before we go back to

3   the calculation, let's go back to the issue, then, of whether

4   or not obstruction should apply to the drug count.

5          Mr. Jacobs, do you have any objection to applying the

6   obstruction enhancement two levels to the drug count?

7          MR. JACOBS:   I certainly do, Judge.   He pleaded

8   guilty.   He was honest in front of you.   He admitted he dealt

9   in steroids, possessed them with intent to distribute them.

10  He did it in a timely fashion.   He should be credited with

11  that, understanding there was one -- I wasn't here at the

12  trial on the gun case, but I think the issue is one date when

13  he may have sold steroids through the undercover officer prior

14  to the date he testified to at trial.   That was, if anything,

15  a tangential issue to the gun possession charge.   That could

16  have been his recollection.   It could have been an honest

17  mistake of memory.

18         THE COURT:   There are fundamental problems in the gun

19  case.   He filed an affidavit that contradicted his testimony.

20  The question is, the relationship of that to the drug case.

21  For purposes of our discussion, you should assume that he

22  perjured himself at the gun trial.   The question is whether or

23  not I should apply that to the drug case.

24         MR. JACOBS:   I don't see why.

25         THE COURT:   Anything further on that?

D. Pereira, CRR

1          MS. YOUSSEF:   Your Honor, to the extent the

2    defendant had already pled, he basically, because of what

3    happened at the trial, in terms of how he minimized what his

4    conduct was --

5          THE COURT:  What justice did he obstruct?

6    Obstruction of justice is very specific.  He pled to the drug

7    count.  It is a little hard for me to see how he did anything

8    that interfered with justice on the drug count.

9          MS. YOUSSEF:   Judge, I mean he did, as the court has

10   noticed already, committed perjury with respect to a very

11   significant point, which was the affidavit that he submitted.

12   That affected the drug case.

13         THE COURT:  How?

14         MS. YOUSSEF:   To parse it out in terms of whether

15   his perjury was specific to a particular case I think is not

16   so much seeing the overall picture here.  I think perjury is

17   something that, when a person commits perjury, it affects, not

18   just their credibility with respect to that particular point,

19   but their credibility overall.

20         It appears to me at least that perjury -- as my

21   colleague points out, under Section 3C1.1 perjury should be

22   analyzed, an obstruction of justice should be analyzed with

23   respect to closely-related offenses and relevant conduct.

24         But, therefore, it doesn't seem really accurate to

25   look at the perjury that he engaged in with respect to a

21

1    particular offense.   Namely, the drug case.

2         THE COURT:   All right.   I just can't agree with that

3    analysis of the guidelines.   I don't think on the particular

4    facts and timing of this case that it is proper under the

5    guidelines to charge the defendant with obstruction of justice

6    on the drug count.

7         MS. YOUSSEF:   Judge, if I may add one point with

8    respect to the drug case itself.

9         THE COURT:   Go ahead.

10        MS. YOUSSEF:   The defendant committed perjury with

11   respect to the drug case.   He took the stand and he stated

12   that he had never engaged in anabolic steroid sales before

13   March 19 of 1998.   The government, in its rebuttal case,

14   brought forward an undercover agent to testify to the exact

15   opposite.   He lied about the drugs.

16        THE COURT:   I adhere to my ruling.

17        All right.

18        Finally, the question of the role of the defendant in

19   the drug case.   The Probation Department identifies no role

20   enhancement in that case.   The government seeks a plus-four

21   enhancement.   The defense, of course, opposes the enhancement,

22   I assume.

23        MR. JACOBS: Yes, because they found he was an

24   independent supplier, possessed no supervisory authority,

25   operated as an independent seller.   He didn't manage an

1  operation.  He didn't organize it.  He sold for himself.

2        When he was out of some supplies, he borrowed from

3  others, but he didn't ask them to sell for him.  On every

4  occasion but one he delivered the drugs himself.  There is no

5  organization here.

6        THE COURT:  Ms. Youssef.

7        MS. YOUSSEF:  Your Honor, on the contrary, there is

8  an organization here.

9        The government has taken efforts to set forth what

10  that organization consisted of and how the defendant was the

11  leader of that organization.  He employed other people such as

12  Boris Lipsky, to conduct his drug deals.  He sent his "boys,"

13  as he puts it, which is a quotation that comes directly from

14  the wiretap tapes, to engage in these sales.  They did sell at

15  his behest with his guidance and not on their own initiative.

16  He also dealt directly with the suppliers of anabolic

17  steroids, the importers as he, himself, admitted during his

18  plea allocution.

19        THE COURT:  How does that make him the leader of an

20  organization as opposed to one of many coconspirators in what

21  appears to me to be a very loose organization of people who

22  bought and sold, often bought and sold from one another?  In

23  other words, I don't have evidence of a hierarchy of

24  conspirators in front of me.

25        MS. YOUSSEF:  Judge, he did not consult with other

D. Pereira, CRR

23

1  people when he made his drug deals.

2          THE COURT:  Right, because he was independent --

3          MS. YOUSSEF:   The top.

4          THE COURT:  Because he was at the top of what?

5          MS. YOUSSEF:   He was at the top of the conspiracy.

6          THE COURT:  But the others made independent sales

7  too, didn't they?

8          MS. YOUSSEF:   Well, they did it at his direction.

9          THE COURT:  Did you claim that Belov was a leader?

10          MS. YOUSSEF:   Belov was not a leader.

11          THE COURT:  Belov was a supplier?

12          MS. YOUSSEF:   Right, who operated through

13  Pavlotskiy.

14          THE COURT:  I mean normally suppliers are at the top,

15  right?  I mean, they are not at the bottom?  How does someone

16  who is receiving drugs from somebody else become a supervisor

17  of the supplier?

18          MS. YOUSSEF:   Judge, I think it might be easier to

19  sort of view this as a supervisor of the person who picked up

20  the drugs, in a sense, a courier.  He was a supervisor of

21  couriers, people who went, picked up the drugs, say, from the

22  supplier, and took the drugs to the ultimate customer.  In

23  that sense, he acted as a supervisor.

24          THE COURT:  Well, what you have shown me is he

25  directed one individual, Lipsky, to pick up or deliver drugs

1    on one occasion.

2           Is that it?

3           MS. YOUSSEF:   Yes, your Honor, as Agent Perfetti has

4    pointed out, it is not just one occasion, it is multiple

5    occasions.

6           THE COURT:   That he is directing Lipsky to deliver

7    drugs?

8           MS. YOUSSEF:   Yes, Judge.

9           THE COURT:   Anything else on this point, Mr. Jacobs?

10          MS. YOUSSEF:   No, your Honor, I think the PSR report

11   is accurate on that point?

12          THE COURT:   Does the probation officer care to

13   comment on that, on role.

14          PROBATION: Your Honor, at the time I wrote this

15   report, honestly, I wasn't aware that there was -- the

16   defendant was directing the actions of others.

17          Subsequent to when I disclosed this, I did speak with

18   Catherine Youssef, who did explain to me there were not just

19   one occasion where I had it in the report, that he, I guess,

20   supervised the actions of another or gave orders to another

21   individual.  If that is in fact the case, that would be

22   indicative of an organizer or supervisor role, if the

23   defendant directed the actions of, even if it is one other

24   individual.  But I am not too familiar with what information

25   that entails.

D. Pereira, CRR

1          THE COURT:  All right.

2          Under the aggravating role adjustment, 3B1.1, No. C,

3   if the defendant was an organizer, leader, manager or

4   supervisor in any criminal activity other than described in A

5   or B, increase by two levels.

6          Now, that still requires some degree of leader or

7   manager.  I take it, at that point there is no need for any

8   number finding of the number of people who were involved in

9   the conspiracy?

10         PROBATION OFFICER:  Correct.

11         THE COURT:  One person who is just directing another

12  person to do things might fall under that category?

13         PROBATION OFFICER:  Correct.

14         THE COURT:  I appreciate that there certainly in this

15  conspiracy, there were more than five participants, and Belov,

16  the defendant, Stand Patrui, Chier Lipsky, Ericoff, Ventura

17  and I believe others.  The issue is really the scope of his

18  role.

19         It may be that the appropriate thing to do would be

20  to add two levels to this for his directing others, Lipsky, to

21  deliver drugs to customers and directing other people to pick

22  up drugs.

23         He did not act alone and clearly the drugs -- there

24  is certainly proof that he had a proprietary interest in the

25  drugs.  So if he was directing people to pick up or deliver

1    drugs, he was doing that at his behest, for his own benefit.

2              MR. JACOBS: If I could just ask one question, then.

3    Ms. Quatt, who wrote the report, wrote that with the exception

4    of one instance, he directly, meaning Pavlotskiy, delivered

5    the steroids.  Where did that come from?

6              PROBATION OFFICER:  If I could explain, this is a

7    case, as you can have seen, that involved numerous

8    defendants.  At the time this offense conduct was originally

9    written, it was -- I am not even sure.  Other individuals

10   started this offense conduct.  Probably just an inaccuracy on

11   my part when I wrote these details.  And at the time I was

12   speaking frequently with the agent.  That's what I just

13   assumed.

14              I mean, after the report was disclosed and obviously

15   they reviewed it, I found out that that wasn't exactly

16   accurate, that it was just one instance.  I think that was

17   something that was in the report of a codefendant case, and at

18   the time I took on this case, I just assumed that the

19   information was accurate.

20              THE COURT:  Anything else?

21              MS. YOUSSEF:   Your Honor, are we concluded with that

22   particular issue?

23              THE COURT:  No.  I wanted to finish up on this

24   issue.  Is there anything else you wanted to say as to that?

25              MS. YOUSSEF:   No, your Honor.

1          THE COURT:  All right.  I think it would be fair to

2     add two levels to the defendant's offense level for role in

3     the offense.

4          MR. JACOBS: Respectfully, Judge, I don't want my

5     silence to indicate I concur with your Honor's opinion.

6          THE COURT:  All right.  All right.

7          Anything else, then?

8          MR. LEVINE: On, this issue, your Honor?

9          THE COURT:  I am going to give him two levels of

10    enhancement for role in the offense which brings it to level

11    18.  I think we dealt with all the disputed issues other than

12    the calculation.

13          MS. YOUSSEF: Your Honor, with respect to the perjury,

14    I would just ask the court to take into consideration if it is

15    looking at perjury in terms of an offense-specific way, that

16    it upwardly depart with respect to the gun charge; that it

17    include a two-point obstruction of justice as part of its

18    calculation with respect to the gun case.

19          THE COURT:  I don't think you can do that.

20          MR. JACOBS: You cannot.

21          THE COURT:  It is a five-year term.  Period.

22          MR. JACOBS: There are no adjustments to that, Judge.

23          THE COURT:  Right.

24          Then, as I understand it, there is 18, level 18 for

25    the drug count, which is Count 1 of -- I am doing this -- I

1  need my clerk.

2         It is 19, Count One, base offense level 16, and

3  enhancement of 2 for the role in the offense, which is level

4  18, and then on the prostitution case, there is level 14, plus

5  4 for the role in the offense, which makes it level 18, and we

6  have actually -- we treat the prostitution -- this applies to

7  both counts of the prostitution case, the conspiracy count and

8  the substantive count.  Then apply the multicount adjustment.

9  We have 18 plus 6, which is 24, and I am applying acceptance

10 of responsibility, which is three levels off, which brings us

11 to level 21, which is 37 to 46 months.

12         At this point, I would hear from defense counsel on

13 any other points you would like to make with regard to

14 sentencing.  Then I will hear from Mr. Pavlotskiy.

15         MR. JACOBS: Judge, would it be possible for your

16 Honor to hear Mr. Pavlotskiy first?

17         THE COURT:  Of course.

18         MR. JACOBS: Because I would only tell you the things

19 he was going to tell you himself.

20         THE COURT:  Sure.  That's fine.

21         THE DEFENDANT:  Judge, my name is Vadim Pavlotskiy.

22 I want to ask for forgiveness from my parents, from the love

23 of my wife, from you, and from all the American people.

24         My dear parents took me from the hell of antisemitism

25 in the Ukraine hoping that I will receive a good education

1  here, and I will find myself here and I will live happily.

2  Unfortunately, I did not fulfill their aspirations and all

3  that was open to me by this great country.

4        Now I will pay for this with the best years of my

5  life.  I think that I deserve this punishment.  I could not

6  leave this punishment.  I just ask for compassion if it can be

7  so.  I can be of help to society still with great pleasure.  I

8  was a coach of children and I achieved good results working

9  with children.  I did, and I had friends.  I did not know the

10  law.  I did not know the language.  This brought me hear to

11  court as a defendant.  I ask for only one thing.  To let me

12  prove that I can be still of use to the American society, to

13  freedom, to democracy.  Please believe me.  That my

14  incarceration and the fact that I will not have the

15  possibility to communicate with my loved ones and that I have

16  fully understood the blame for what I have done, and, you

17  know, I am, too, blame, and these people believed in me fully,

18  and this, of course, puts a great burden on my shoulders.

19        I analyzed severely what I have done, and all of this

20  proved to me that -- all that I have done have lead me

21  astray.  What have been put into me with love by my parents,

22  all the possibilities that existed before me in this country,

23  all of this, bring me to my ideals.  If the Americans and the

24  American authorities gave me the possibility to express how

25  sorry I am before my new homeland and that I could prove

1  myself in any which way and to serve my new country, I would

2  be happy to give all of my strength and my life to prove that

3  I have done wrong and I am truly sorry for that.

4         Whatever the sentence might be that would be issued

5  here by Americans to me today, by American authorities, I will

6  accept it for what I have done as just.

7         I fully understand that I am in the wrong before the

8  American people and before the American authorities.  I know

9  that I do not deserve your compassion today for what I have

10 done in the past, but I nevertheless urge the American justice

11 system, and my request comes from the bottom of my heart.  I

12 ask you to forgive what I have done and mistakes that I have

13 made.

14         Honorable Judge, first and foremost, I would like to

15 thank you for your humane approach to me during the trial.  I

16 have suffered great hardships during the trial.  The U.S.

17 Attorney, the prosecutors, spoke of what I have done, and this

18 was like hitting me in the face.  Now I feel free.  I said

19 everything about what I have done, and I will pay for what I

20 have done.  I will serve out my sentence with the knowledge

21 that whatever comes I deserved.  Respectfully yours, Vadim

22 Pavlotskiy.

23         THE COURT:  Mr. Jacobs.

24         MR. JACOBS: Your Honor, my client is 29.  He has no

25 criminal record.  I think he certainly is a redeemable human

1  being, because of the 924C count, there will have to be, by

2  all measures, a substantial sentence.  The three people who

3  love him the most in this world are in this courtroom, his

4  mother and his father and his fiance.  The sentence affects

5  not only him but it affects an only child.  I think the most

6  difficult part about being a judge is judging people at a time

7  like sentencing.  This must be extremely difficult to try to

8  do the right thing.

9           I think that given the lengthy sentence that will

10  entail here, even by sentencing my client in your discretion

11  at the bottom of the range for the prostitution and drug case,

12  he will still face over eight years' imprisonment, a very

13  substantial term for somebody 29, and these literally are the

14  best years of his life.

15           But I hope that at least would be the best of a bad

16  outcome.

17           Thank you, Judge.

18           MS. YOUSSEF:   Your Honor, if the government may just

19  briefly be heard.

20           To the extent that we would be given the opportunity

21  at this point still to try to convince the court that there

22  are additional drugs that should be taken into consideration

23  as part of the calculation and that there are two more points

24  that should be added as part of the defendant's role, we would

25  certainly role ask the court's indulgence and be given an

1   opportunity to make that proof.

2        In addition, we would ask that with respect to the

3   sentencing range that the court appears to have come to at

4   this point, that the defendant be sentenced to the upper end

5   of that range, to the 46 months to run consecutive to the

6   five-year mandatory term with respect to the gun charge,

7   because the defendant does have a criminal record as it turns

8   out, which is indicated in the presentence report, and appears

9   to still be saying in his comments that he didn't know the law

10  in this country, that he hasn't really fully understood what

11  it is that he has done and accepted responsibility for that.

12        THE COURT:   Mr. Levine.

13        MR. LEVINE: Your Honor, if I could briefly comment on

14  the prostitution case that I was involved in.

15        As you listen to the defendant here, he is obviously

16  a bright man.  He is a man that obviously has intellectual

17  gifts and has the ability to express himself quite eloquently,

18  which makes this case standing here today both all the more

19  shame, but also all the more calling for a substantial

20  punishment.

21        This defendant, in commenting on his lack of

22  knowledge of the law, it harkens back to one of the tapes here

23  which was presented to the court as part of the 404(b) motion

24  where he commented to his coconspirator Boris Gershenstein

25  that they are in an illegal business.

D. Pereira, CRR

1          There was not then nor is there now I think in this

2    record even a scintilla of doubt about the recognition that

3    the kind of conduct that was involved in this case was

4    illegal, especially relating to the prosecution case, but also

5    the drug case, was absolutely immoral.  This prostitution

6    business was a business that is built quite literally on the

7    exploitation of other people who also traveled to the United

8    States in the hope of that same better life.

9          For the defendant, quite properly, to point out the

10   many gifts that he has, a supportive family and obviously the

11   government wishes them no ill-will because of this, but I

12   would ask also the court keep in mind the substantial numbers

13   of victims in this case; that this defendant set about to run

14   a business of which as to there is no dispute as to the

15   prostitution case whose objectives and means of operation is

16   really to demean and to bring women in this case into a way of

17   life and into a form of conduct which is very simply

18   abhorrent.  It is not just something that's illegal.  It is

19   not just something that has a violation of the substantive law

20   for technical incentive reasons.  It is the kind of conduct of

21   having women that you are making money off of in the

22   prostitution business that is really, I must say to the court,

23   on the very lowest end of the kind of behavior that human

24   beings engage in.

25          This defendant profited from that.  He ran a business

D. Pereira, CRR

34

1   in which he often made threats to people when the business

2   wasn't running right.   The government was prepared at trial to

3   present evidence concerning how Boris Gershenstein was

4   treated.

5          So, although, your Honor, there are things to be

6   said, obviously as Mr. Jacobs has done eloquently and

7   Mr. Pavlotskiy has done himself eloquently in his favor about

8   his redeemability, I think it is important to take a moment

9   here and to reflect upon the fact that this conduct,

10  especially as it relates to the prostitution, has really

11  caused undoubtedly untold devastation for the women that have

12  had to be involved in this.   It demeans our communities.   It

13  demeans this district.   I think the defendant has to be held

14  accountable for that.   The fact that he is now beginning to

15  recognize how serious these things are is certainly a good

16  sign but, unfortunately, you can't unring this bell.   This

17  kind of conduct, it seems to me, is the kind of conduct that

18  courts have to condemn in the strongest terms because it is

19  really the most base form of exploitation of one human being

20  to another.

21         Thank you, your Honor.

22         THE COURT:   Anything else?

23         MR. JACOBS:  No, Judge.

24         THE COURT:   All right.

25         Mr. Pavlotskiy, I have listened to your statement

1    today in which you have stated your remorse.  I hope that is

2    sincere and truthful.

3             THE DEFENDANT:  It is very sincere, your Honor.

4             THE COURT:  But I must say that I have observed this

5    defendant over a multiple proceedings, guilty pleas, at trial,

6    and I have to treat his claims of genuine remorse as subject

7    to serious doubt.

8             This defendant has had enormous difficulty in fully

9    accepting his responsibility for these crimes.  I have given

10   him the benefit of the acceptance of responsibility adjustment

11   for the various reasons that I have set forth here this

12   afternoon.  I fully believe that I am correct on the law in

13   giving him that benefit.

14            It is, after all, a very modest benefit for guilty

15   pleas which is available under the sentencing guidelines, and

16   I think he is entitled to that.

17            But the question -- and many defendants accept

18   responsibility in that sense, and what they really feel, who

19   knows, but they are entitled to it.  I have given it to the

20   defendant.

21            But the extent to which this defendant really

22   understands the seriousness of crimes involving carrying

23   around a gun:  What are guns used for?  They are used to shoot

24   people and kill people.  That's what they are for.  Terribly

25   dangerous thing to have in our society.

1      Dealing in drugs and, as Mr. Levine has eloquently

2 stated with regard to the prostitution claim, I mean, this is

3 just a very dreadful conduct.

4      So I have to consider the seriousness of that conduct

5 to the victims and to our society.

6      The defendant's family members have written to me and

7 spoken very eloquently of their concern for their son, their

8 fiance, of their faith in him, their belief that he is capable

9 of good things, and set forth good things that he has done

10 apart from his criminal conduct.

11      But I don't sentence the family.  I know the family

12 suffers.  There is no question about it.  Sometimes I am

13 confident the family suffers far more than the defendant.  I

14 have to consider the others who are affected by this.

15      Also, the fact that this defendant has such a

16 supportive family, has apparently great intellectual gifts and

17 other gifts.  He has blundered that.  These are not mitigating

18 circumstances.  These are, if anything, aggravating

19 circumstances.  This is a defendant who could have made

20 something out of his life and chose not to.  It doesn't mean

21 that when he is released from custody he can't turn his life

22 around, but he's going to have to seriously think about what

23 he has done and what he needs to do to turn his life around.

24      Based upon all of the circumstances, I am going to

25 sentence the defendant at the top of the guidelines, to 46

37

1   months concurrent on each of three counts, Count One of

2   99-Crim-19, Count One and two of 99-CR-23.

3           In addition, on Count Two, I impose a five-year

4   statutorily required consecutive sentence.  Three years of

5   supervised release, concurrent on each count, $400 special

6   assess assessment and no fine in light of the defendant's

7   inability to pay a fine.

8           I understand there are no open counts.  Correct me if

9   I am wrong.

10          MR. LEVINE: That is correct, your Honor.

11          MS. YOUSSEF:    That is correct.

12          THE COURT:    I advise the defendant of his statutory

13  right to an appeal.

14          Thank you, counsel.

15          MR. JACOBS: Judge, may I just make three requests,

16  very brief?

17          THE COURT:  Yes.

18          MR. JACOBS: Your Honor recommendation to the Bureau

19  of Prisons that he be placed as close as possible to home, if

20  particularity is allowed, then Otisville prison in New York

21  State.

22          THE COURT:  I wouldn't pick a particular prison but

23  it is New York.

24          MR. JACOBS: Close to home.

25          THE COURT:  Close to New York, in the New York area.

D. Pereira, CRR

38

1          MR. JACOBS: Yes.

2          THE COURT:  I will recommend that.

3          MR. JACOBS:  He is also asking if you request, if

4   found eligible, he be placed in a drug treatment program for

5   steroid use.

6          THE COURT:  He has represented that he doesn't use

7   steroids.

8          MR. JACOBS: He had been using steroids.

9          THE COURT:  Well, once again, we see how reliable the

10  defendant's statements are.  If he wants to be in a drug

11  treatment program, he should request one.  He's represented to

12  me that he has not been on drugs for a considerable period of

13  time.

14         MR. JACOBS: Judge, can you give him the credit for

15  two-and-a-half years of home confinement as well?

16         THE COURT:  Credit for what.

17         MR. JACOBS: Towards his sentence.

18         THE COURT:  No.  I don't have any power to do that.

19         Thank you, counsel.

20

21

22

23

24

25

D. Pereira, CRR